## BUSHNEL v. WHITLOCK *et al.*

Township Trustees: POWERS: SALE OF UNUSED CEMETERY GROUND: CONDITIONS ATTACHED. Township trustees are constituted a board of health, and have charge of all cemeteries within the limits of their township, dedicated .to public use, and not controlled by trustees or other corporate bodies,—Code, section 393,—and by section 415 they are empowered to make regulations for the protection of the public health, and respecting nuisances, sources of filth, and causes of sickness in their respective townships. Under these sections, *held* that township trustees, being about to sell ground purchased for cemetery purposes, but which they regarded as unfit to be used for such purpose, could not be enjoined from selling on the ground that they proposed to sell only upon condition that the ground should not be used for a private or public cemetery, and that, upon an attempt to so use it, it should be forfeited back to the trustees and their successors in office.

*Appeal from Van Buren District Court.*—HON. H. C. TRAVERSE, Judge.

FILED, MAY 10, 1889.

ACTION to restrain the defendants, as trustees of Bonaparte township, from selling certain lands purchased for cemetery purposes, under certain limitations or restrictions. There was judgment for the defendants, and plaintiff appeals.

*E. L. Burton* and *Wherry & Walker*, for appellant.

*L. A. & L. G. Palmer* and *Sloan, Work & Brown*, for appellees.

GRANGER, J.—Bonaparte township is the owner of the premises in controversy, and the defendants are its trustees. The premises were purchased for use as a public burial ground, but have never been used as such. In July, 1887, the trustees caused the following notice of the sale of said premises to be published: "Bids will be received up to July 25, 1887, for the following tract of land: The southwest quarter of the northeast quarter of the northeast quarter of section 8, township 68, range 8 west, containing ten acres, more or less. By order of the board of trustees of Bonaparte township. Trustees reserve the right to reject any or all bids. If not sold on said day, will be sold at private sale. Bids received by township clerk." Bids were made for the land pursuant to this notice, which were refused, and in August, 1887, the following notice was published by the trustees: "The trustees of Bonaparte township, Van Buren county, Iowa, will sell at public auction, in front of the postoffice in Bonaparte, Iowa, on August 6, 1887, at two o'clock p. m., the following tract of land: The southwest quarter of the northeast quarter of the northeast quarter of section 8, township 68, range 8,—ten acres, more or less, with the following conditions in deed: That the said land, when sold, that it will be so stated in the deed that said land cannot be used for private or public cemetery, and should any attempt be made to use it for a cemetery, the land be forfeited back to the trustees and their successors in office."

It is the proceeding to sell under this second notice that is sought to be enjoined. The sole question urged as against the sale is that defendants, in making the sale with limitations or restrictions as to the use of the lands, are acting fraudulently, and against the public interest, and it is urged in argument that they have no legal right to impose the limitations proposed. By section 393 of the Code, township trustees are constituted a board of health, and have charge of all cemeteries within the limits of their township, dedicated to public use, not controlled by other trustees or incorporated bodies. Section 415 gives the trustees power to make regulations for the protection of the public health, and respecting nuisances, sources of filth, and causes of sickness, in their respective townships. We think the foregoing provisions of the law bear indirectly on the question presented in this case. With the concession of appellant in argument that the trustees have the right to sell without restriction, the question does not seem to be a difficult one. The case of *Christy v. Whitmore*, 67 Iowa, 60, involves a controversy as to the same premises, and in that case a *mandamus* was asked to compel the use of the premises for a cemetery, having been purchased by public funds for such a purpose; and this court held that, even though so purchased, it was a question controlled by the discretion of the trustees, they having the unqualified right to determine its fitness for such use. This case is cited only to show the control and authority of the trustees as to its use and suitableness therefor. Having the property for sale, and being the conservators of the public health, suppose they should, in the published terms of the sale, provide that such nuisances as affect the public health should not be placed thereon. That right, we think, would not be questioned. It would be in exact accord with their duties as health officers. The law invests them with a discretion as to what is deleterious to public health, and the power to cause its abatement. It seems that after the purchase of these premises for the purpose of a cemetery they were by the trustees regarded as unsuited

to such a purpose, and in an effort to sell them they desire to provide against their use as such, and we are not warranted in believing that it is not for some salutary or legal reason. A reason for not using it as a cemetery, in the minds of the trustees, may be that as such it would impair the health of a community, and a purpose of the sale would be to effect a change in location; and, if sold without the restriction, the entire purpose of the sale would be defeated. We think, as a matter of public interest, the trustees should be invested with such a discretion, and it is difficult to see how it could operate to a public disadvantage or injury. Considerable is said in argument as to a fraudulent purpose on the part of the trustees in making the sale. The testimony discloses a condition of affairs certainly not desirable, and we are unable to say just what purposes actuated the trustees in making the change, or placing the restrictions in the terms of sale; but there is no such showing as will justify us in finding their actions fraudulent, and interfering in the discharge of their official duties. This seems to have been the view of the district court on an examination of the testimony, and its judgment is                              AFFIRMED.